NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3145
_____

JOHN A. BENNETT, M.D.; DEVON ROBOTICS, LLC.;
DEVON HEALTH SERVICES, INC.

Appellants

v.

ITOCHU INTERNATIONAL, INC; MEDSURG SPECIALTY DEVICES, INC;
THOMAS N. APPLE; MOUNIR RABBAT; YOSHIHISA SUZUKI

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 09-cv-01819, 09-cv-04123)
District Judge:  Honorable J. Curtis Joyner
_____

Submitted Under Third Circuit LAR 34.1(a)
June 2, 2014

Before:  HARDIMAN, SCIRICA and ROTH, *Circuit Judges*.

(Filed: July 10, 2014)
_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

Devon Robotics, LLC, Devon Health Services, Inc., and their owner, John

Bennett, M.D., appeal a post-trial judgment and a summary judgment on claims for

breach of contract, breach of duty to negotiate in good faith, and promissory estoppel, and on a counterclaim for breach of contract. For the reasons that follow, we will affirm.

I

Because we write primarily for the parties, who are well acquainted with the case, we recite only the facts and procedural history essential to our decision.

This appeal arises from a soured partnership between two businessmen and their companies. In 2007, Japan-based Itochu International, Inc., began to explore investment opportunities in the United States health care industry. To that end, the head of Itochu's enterprise division, Mounire Rabbat, became acquainted with Dr. John Bennett and his medical supply distribution company, Devon Health Services, Inc. (DHS). Rabbat and Bennett discussed two opportunities for cooperation: a multi-million dollar Itochu investment in DHS and a joint venture to sell medication-mixing robots.

The projects never materialized, and this litigation ensued. Rabbat and Bennett negotiated the DHS investment and even executed several non-binding letters of interest, but Itochu never finalized the deal. The two did come to terms on the robot-selling joint venture. Bennett formed a new company, Devon Robotics, Inc., that acquired and then leased the distribution rights for the robot to an Itochu subsidiary, MedSurg. A distribution agreement set out the responsibilities for both MedSurg and Devon Robotics. The joint venture failed, however. MedSurg could not sell the robot, and each side blamed the other for the failure. In the end, Devon Robotics terminated the distribution agreement with MedSurg and filed this suit in the United States District Court for the Eastern District of Pennsylvania.

2

Our review is limited to four claims and one counterclaim the District Court adjudicated in that suit. Devon Robotics, DHS, and Bennett brought two claims of promissory estoppel and Devon Robotics brought one claim of breach of a duty to negotiate in good faith. The District Court entered summary judgment in favor of Itochu and Rabbat on those claims. The parties went to trial on the competing claims of Devon Robotics and MedSurg for breach of the distribution agreement. After the jury returned a verdict in MedSurg's favor, Devon Robotics, DHS, and Bennett filed this timely appeal.[1]

## II

### A

Devon Robotics challenges the jury's verdict on its claims for breach of the distribution agreement. After trial, Devon Robotics renewed its motion for judgment as a matter of law under Fed. R. Civ. P. 50(b), claiming that the verdict went against the weight of evidence. The District Court disagreed and denied the motion.[2] We review the District Court's denial of Devon Robotics's motion de novo, viewing the evidence in the light most favorable to MedSurg, as the prevailing party. *See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009). Judgment as a matter of law is appropriate when the record is "critically deficient of that minimum quantity of evidence

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

[2] Appellants also request a new trial as an alternative to the entry of judgment as a matter of law. Because Devon Robotics did not ask for a new trial on these grounds in the District Court, it has waived this argument. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 799 (3d Cir. 2001).

from which a jury might reasonably afford relief." *Raiczyk v. Ocean Cnty. Veterinary Hosp.*, 377 F.3d 266, 269 (3d Cir. 2004).

Devon Robotics first alleged that MedSurg materially breached the distribution agreement by failing to hire the contractually required minimum number of salespeople and by failing to fill certain roles. Viewing the evidence in the light most favorable to MedSurg as the verdict winner, we conclude that the jury could have reasonably found that MedSurg substantially complied with its obligations. MedSurg introduced evidence that Devon Robotics shared in the blame for MedSurg's incomplete sales staff, even firing two of MedSurg's salespeople. Moreover, the jury could have reasonably found that MedSurg's breach was not material because of evidence showing that the failure to sell robots was caused by performance problems with the robots themselves and the economic recession, which made hospitals more cost-conscious. Accordingly, the jury was entitled to conclude that MedSurg did not materially breach its staffing obligations under the distribution agreement.

Separately, Devon Robotics argued MedSurg breached the distribution agreement by refusing to pay for a clinical trial on the robot. The jury was instructed, without objection by Devon Robotics, that MedSurg's breach must be excused if the jury found Devon Robotics had "already decided to terminate the contract or was not acting in good faith" when MedSurg's duty to pay ripened. App. at 1458. MedSurg showed the jury an email, sent several days before Devon Robotics demanded payment from MedSurg, in which Bennett confirmed that Devon Robotics would terminate the distribution agreement. On that evidence alone, the jury could have reasonably found that Devon

4

Robotics decided to terminate the distribution agreement before it billed MedSurg for the clinical trial, thus excusing MedSurg's failure to pay. For these reasons, we perceive no error in the District Court's dismissal of Devon Robotics's renewed motion for judgment as a matter of law, and we will affirm its order.[3]

B

Devon Robotics claims it is entitled to a new trial because of a series of questions at trial about its decision to sell a $7 million investment for $10. Its argument proceeds on two fronts: that the testimony was irrelevant under Fed. R. Evid. 401 and unfairly prejudicial under Fed. R. Evid. 403. We review evidentiary rulings for an abuse of discretion. *Acumed*, 561 F.3d at 211. At trial, Bennett testified that Itochu caused Devon Robotics's financial demise. The evidence of Devon Robotics's decision to sell $7 million in stock for $10 rebutted Dr. Bennett's assertion, satisfying Rule 401's relevance standard. Devon Robotics claims that the danger of unfair prejudice, confusion of the issues, and misleading the jury substantially outweighed the probative value of the evidence in contravention of Rule 403, saying only that the evidence made Appellants "appear dishonest." Br. of Appellants at 49. We readily conclude that these bare allegations fail to demonstrate an abuse of discretion and find no error in the District Court's denial of Devon Robotics's motion for a new trial.

---

[3] Devon Robotics also argues that the District Court erred in denying its post-verdict motion for judgment as a matter of law on MedSurg's counterclaim for breach of the distribution agreement, which arose from Devon Robotics's failure to pay commissions. The District Court denied this motion because Devon Robotics never made a pre-verdict motion for judgment as a matter of law, which is a prerequisite for the District Court to consider a post-verdict motion. We see no error in the District Court's faithful application of the renewal requirement of Fed. R. Civ. P. 50(b).

For these reasons, we will affirm the order of the District Court denying Devon Robotics's motion for a new trial.

III

Before trial, the District Court entered summary judgment against Devon Robotics, DHS, and Dr. Bennett on their claims for promissory estoppel and breach of duty to negotiate in good faith. Appellants claim the District Court erred in holding that their reliance on these promises was unreasonable as a matter of law. We exercise plenary review over the District Court's summary judgment. *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 454 (3d Cir. 2003). We will affirm if the moving party establishes that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

After reviewing the record before the District Court and considering its thorough opinion disposing of these claims, we see no error in the summary judgment. Appellants rooted their first promissory estoppel claim in alleged promises by Rabbat to complete the investment that DHS and Itochu negotiated. The District Court held that Appellants' reliance on these oral promises was unreasonable as a matter of law because the oral promises were contradicted by writings signed by the parties. Throughout the negotiations on the potential DHS investment, the parties executed non-binding letters of interest that stated that any binding agreement would result only from a formal, written contract and that the investment must win the approval of Itochu's internal investment committee—neither of which occurred. Appellants' reliance on oral promises that contradicted the parties' signed writings was unreasonable as a matter of law.

6

Appellants' second promissory estoppel claim arose from alleged oral promises by Rabbat that Itochu would be an equal partner in the robot joint venture. However, Bennett admitted that he knew at the time that Itochu's participation in the joint venture was not final until the Itochu investment committee approved the deal. In the view of the District Court, Bennett acted on his own hunch that Itochu would join him in the venture and that any reliance was unreasonable because he knew the deal was contingent. We agree with the District Court that Bennett's asserted reliance was unreasonable as a matter of law.

Finally, Appellants argued that Itochu breached a duty to negotiate in good faith. A duty to negotiate in good faith requires a binding agreement between the parties expressing their commitment to negotiate together in good faith and reach a final agreement. *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 299 (3d Cir. 1986). The District Court granted Itochu summary judgment because Devon Robotics failed to identify a specific promise to negotiate in good faith apart from Dr. Bennett's uncorroborated and conclusory allegations to that effect. *See Celotex*, 477 U.S. at 322. Appellants argue that a term sheet executed in the course of negotiations on the DHS investment included one such promise because the parties agreed to make "a firm and committed effort to close" the deal. Another part of the term sheet, however, uses unambiguous language to disclaim any intent by the parties to bind each other. That fact is fatal to the claim. For these reasons, we will affirm the District Court's summary judgment.

IV

For the foregoing reasons, we will affirm the order of the District Court denying Appellants' motion for judgment as a matter of law and for a new trial. Additionally, we will affirm the District Court's summary judgment on Appellants' claims for promissory estoppel and breach of a duty to negotiate in good faith.